UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BACK-UP SYSTEMS MAINTENANCE, LLC <br><br> v. <br><br> RAMIRO SUAREZ, ET AL. | § <br> § <br> § <br> §     CIVIL NO. 4:21-CV-521-SDJ <br> § <br> § <br> § |

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Back-Up Systems Maintenance, LLC's Motion for Entry of Default Judgment. (Dkt. #16). Defendants Ramiro Suarez and Included Power, LLC have failed to respond, and their deadline to do so has passed. Having considered the motion; Back-Up Systems Maintenance, LLC's supplemental brief; the evidence in the record; and the applicable law, the Court concludes that the motion should be **GRANTED in part** and **DENIED without prejudice in part**.

## I. BACKGROUND

Back-Up Systems Maintenance, LLC ("BSM") filed its complaint on July 7, 2021. (Dkt. #1). Suarez and Included Power, LLC ("Included Power") were subsequently served. (Dkt. #4, #8). To date, neither Suarez nor Included Power has appeared in this case. Upon BSM's request, the Clerk entered a default against both Suarez and Included Power. (Dkt. #6, #10).

Because Suarez and Included Power have failed to respond to BSM's complaint and default-judgment motion or to otherwise appear in this case, the Court accepts the following allegations as true. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing, among others, *Ohio Cent. R.R. Co. v. Cent. Tr. Co. of N.Y.*, 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561 (1889)) ("The defendant, by

his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."); *see also* L.R. CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

BSM provides IT services and back-up power products and equipment of all makes and models, including generators, batteries, transfer switches and Uninterruptible Power Supply (UPS) systems. (Dkt. #1 ¶ 6). In 2014, BSM hired Suarez part-time as an independent contractor. Suarez prepared invoices using BSM's pricing structure and visited customer sites to test and service battery products. BSM initially disclosed its confidential pricing structure information to Suarez under an oral confidentiality agreement. (Dkt. #1 ¶ 7). Relevant here, Suarez agreed not to disclose BSM's confidential information to third parties. BSM subsequently hired Suarez as a full-time contractor. (Dkt. #1 ¶ 7).

In December 2018, BSM grew suspicious that Suarez was contacting its customers and performing jobs for those customers without BSM's knowledge. (Dkt. #1 ¶ 8). Suarez informed BSM that he wanted to earn additional income by performing other jobs outside of his obligations with BSM. (Dkt. #1 ¶ 8). At this point, BSM asked Suarez to sign a formal Non-Compete/Non-Disclosure/Non-Solicitation Agreement (the "Agreement"). (Dkt. #1 ¶ 8); (Dkt. #1-1). BSM advised Suarez that it would terminate his employment as a contractor if he did not sign the Agreement.

(Dkt. #1 ¶ 8). Suarez signed the Agreement. In exchange, BSM paid him $17,500 and increased his annual salary by $10,800. (Dkt. #1 ¶ 8–9).

BSM and Suarez executed the Agreement on January 10, 2019. (Dkt. #1 ¶ 9). The Agreement bound Suarez and his affiliates[1] to the following confidentiality and nondisclosure provisions:

> Except solely in the course of Contractor's or Contractor's Affiliates providing Contractor Services to BSM or BSM's Affiliates, Contractor and Contractor's affiliates:
>
> > a. **shall not use, disclose, disseminate or otherwise communicate, directly or indirectly, in whole or in part, at any time or in any manner**, any of the Confidential Information without the prior express written consent of the BSM, nor shall Contractor or such Contractor's Affiliates permit any of its representatives, or any third person acting for or on its behalf to do any of the foregoing. **Contractor shall be directly liable and responsible for the performance and compliance with this Agreement** by their respective Affiliates and Contractor shall be individually liable for the failure of any of such Contractor's Affiliates with the strict compliance with the terms and conditions of this Agreement and any damages arising there from.
> >
> > b. shall abide by all BSM physical, network and password security policies and procedures to be utilized in the provision of their services.
> >
> > c. Shall not provide confidential information or trade secrets directly or indirectly to third parties.

(Dkt. #1-1 at 2).

---

[1] Under the Agreement, the term "Affiliate" means, "with respect to any Person, any other Person, that directly or indirectly, through one or more intermediaries, controls, or is controlled by or under common control with such Person." (Dkt. #1-1 at 1). Relevant here, the term "Person" includes "any . . . limited liability company . . . and the heirs executors, administrators or other legal representatives of any individual." (Dkt. #1-1 at 1).

3

The Agreement also contains the following noncompete provisions:

> The Parties acknowledge the sensitive nature of the information and trade secrets involved in the business BSM is engaged in. As such it is necessary for BSM to protect the Trade Secrets and confidential information provided to Contractor by BSM for the sole purpose of conducting business FOR BSM only. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Contractor, Contractor agrees that, commencing on the Effective Date, continuing during all periods in which Contractor, or Contractor's Affiliates are providing Contractor Services to BSM **and continuing for a period of five (5) years following the date that Contractor and Contractor's Affiliates cease to provide Contractor Services to BSM**, Contractor and Contractor's Affiliates, **shall not directly or indirectly do any one or more of the following**:
>
> > a. solicit business from any customers, prospects or clients of BSM revealed or disclosed in the course of discussions or any other form of communications, including, but not limited to, written communication, facsimile, voicemail and email communication;
> >
> > b. Utilize in any manner any of the Confidential Information except utilization as may be required in the course and scope of Contractor, or Contractor's Affiliates, providing Contractor Services to BSM;
> >
> > c. Do business in any manner with any former or existing customers becoming competitor to BSM in the state of Texas. BSM will provide written notification to Contractor in the event of a violation to the previously stipulated condition. The notification will ask the Contractor to cease current activities immediately upon the delivery of such written notification to Contractor.
> >
> > d. Nor induce or influence and or seek to induce or influence any person who is engaged by BSM as an employee, agent, independent contractor or otherwise, to terminate his or her employment or engagement, or hire any employee, agent, or independent contractor of BSM.

(Dkt. #1-1 at 2–3).

By December 16, 2019, the relationship between the parties had soured, resulting in Suarez's termination as an independent contractor for BSM. (Dkt. #1 ¶¶ 15–16). BSM sent multiple letters to Suarez requesting that he return any company property and provide a sworn statement that he deleted all of BSM's confidential information in his possession. (Dkt. #1 ¶ 16). Suarez did not respond to these requests. (Dkt. #1 ¶ 16).

A couple weeks later, Suarez formed Included Power by registering it as a business with the Texas Secretary of State. (Dkt. #1 ¶ 17). Like BSM, Included Power services back-up power products and equipment. (Dkt. #1 ¶ 17). Suarez contacted several of BSM's customers—including Chickasaw National Medical Center and Infoimage, Inc.—and offered them quotes based on BSM's confidential pricing information. (Dkt. #1 ¶ 17).

At this point, counsel for BSM sent a cease-and-desist letter to Suarez demanding that Suarez and Included Power immediately stop disclosing BSM's confidential information and breaching the Agreement. (Dkt. #1 ¶ 18). BSM also demanded that Suarez and Included Power execute a notarized affidavit that they have (1) deleted all BSM's confidential trade-secret information—including BSM files and customer information—in their possession, custody and control; (2) ceased and will continue to refrain from using or disclosing BSM's confidential trade-secret information; and (3) ceased and will continue to refrain from soliciting or doing business with any former or existing customers, prospects or clients of BSM for the full five-year term of the Agreement. (Dkt. #1 ¶ 18). Suarez executed such an affidavit

5

and provided it to BSM. (Dkt. #1-2). Over the next several months, however, Suarez and Included Power used BSM's trade secrets and other confidential information to undercut BSM's pricing and steal both Chickasaw National Medical Center and Infoimage, Inc. as customers. (Dkt. #1 ¶¶ 20–26).

Based on these allegations, BSM sued Suarez and Included Power for (1) trade-secret misappropriation under the federal Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"), (2) breach of contract, and (3) tortious interference with contractual and prospective business relations. To remedy these alleged violations, Back-Up Systems seeks injunctive relief against Suarez and Included Power, damages, and an award of attorney's fees. BSM now moves for entry of default judgment on its claims for trade-secret misappropriation and breach of contract.[2] (Dkt. #16).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Second, an

---

[2] Since filing its motion for default judgment, BSM has abandoned its tortious-interference claim and narrowed its request for monetary relief. (Dkt. #19).

6

entry of default may be entered by the clerk when the default is established. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Third, after an entry of default, a plaintiff may apply to the clerk or the court for a default judgment. FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Rule 55(b)(2) grants a district court "wide latitude," and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). A defendant, by its default, admits a plaintiff's well pleaded allegations of fact. *Nishimatsu,* 515 F.2d at 1206.

### III. DISCUSSION

In determining whether to enter a default judgment, courts utilize a three-part analysis: (1) "whether the entry of default judgment is procedurally warranted," (2) "whether a sufficient basis in the pleadings based on the substantive merits for judgment exists," and (3) "what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing, among others, *Lindsey*, 161 F.3d at 893). The Court addresses each issue in turn.

**A. Default Judgment is Procedurally Warranted**

The Court must first consider whether the entry of default judgment is procedurally warranted. *Lindsey*, 161 F.3d at 893. Relevant factors in making this determination include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are

7

>clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

On balance, these factors weigh in favor of granting default judgment against Suarez and Included Power. When a defendant defaults, it admits to the plaintiff's well-pleaded allegations of fact. *Nishimatsu,* 515 F.2d at 1206. Thus, there are no material issues of fact in dispute here. *See id.* BSM's interests are prejudiced because Suarez and Included Power have not answered the complaint or otherwise defended, bringing the adversarial process to a halt. *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (citing *Lindsey*, 161 F.3d at 893). Suarez and Included Power were served with process and failed to respond despite having ample notice and sufficient time to do so. So the grounds for default are clearly established, and a default judgment is not unusually harsh.

As to the remaining factors, no evidence of mistake or excusable neglect exists. Nor does there appear to be any basis on which the Court would be obligated to set aside the default. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (describing the equitable principles a district court evaluates when considering whether good cause exists to set aside a default, including "whether the default was willful, whether setting it aside would prejudice the adversary, [] whether a meritorious defense is presented," and whether "the defendant acted expeditiously to correct the default" (cleaned up)). For these reasons, default judgment is procedurally appropriate.

8

**B. Sufficient Basis in the Pleadings to Enter Default Judgment**

The Court must next consider whether BSM's complaint provides a sufficient factual basis to enter default judgment. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment."). In determining whether there is a sufficient basis in the pleadings for judgment, courts in the Fifth Circuit "draw meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required.[3] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Applying this standard, the Court now considers the sufficiency of BSM's claims.

**1. Trade-Secret Misappropriation**

BSM pleads facts sufficient to support its claims for trade-secret misappropriation under the DTSA and the TUTSA.

---

[3] To be clear, this low threshold is less rigorous than the plausibility standard under Rule 12(b)(6). *Wooten*, 788 F.3d at 498 n.3 ("declin[ing] to import Rule 12 standards into the default-judgment context" because "a default is the product of a defendant's *inaction*" rather than the invocation of Rule 12's defense).

9

The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Accordingly, the elements of a DTSA claim are "(1) ownership of a trade secret that (2) has been misappropriated and that (3) relates to a product or service in interstate commerce." *Providence Title Co. v. Truly Title, Inc.*, 547 F.Supp.3d 585, 594 (E.D. Tex. 2021 July 1, 2021). The elements of a trade-secret misappropriation claim under Texas law are similar. To recover for trade-secret misappropriation, a plaintiff must show "(1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages." *Lakeway Reg'l Med. Ctr., LLC v. Lake Travis Transitional LTCH, LLC*, No. 03-15-00025-CV, 2017 WL 672451, at *13 (Tex. App.–Austin Feb. 17, 2017, pet. denied); *see also Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366–67 (Tex. App.–Dallas 2009, pet. denied) (same).

Here, BSM alleges that it owns certain trade secrets, including its pricing information and customer lists, that provide a competitive advantage in its business. (Dkt. #1 ¶ 28). BSM also alleges that it took reasonable measures to keep this information secret and revealed it to Suarez in confidence while he worked as a contractor for BSM. (Dkt. #1 ¶ 28). The Agreement Suarez signed, which bound both Suarez and his affiliates (such as Included Power), stated that this information is confidential and was not to be used or disclosed without BSM's consent. (Dkt. #1-1). Nonetheless, Suarez and Included Power allegedly used and disclosed BSM's trade

secrets without consent to solicit and steal BSM's customers located in Texas and Oklahoma. (Dkt. #1 ¶¶ 17, 20–26, 28–32). This misappropriation, BSM alleges, caused it to lose business from these customers and suffer lost profits as a result. (Dkt. #1 ¶ 33).

These alleged facts, which are deemed admitted, are sufficient to "raise [BSM's] right to relief above the speculative level" and provide "fair notice" to Suarez and Included Power of the trade-secret misappropriation claims against them. *See Wooten*, 788 F.3d at 498. Accordingly, a sufficient basis in the pleadings exists for entry of default judgment on BSM's claims under the DTSA and TUTSA for trade-secret misappropriation against Suarez and Included Power.

**2. Breach of Contract**

A sufficient basis in the pleadings likewise exists to enter judgment on BSM's claim for breach of contract under Texas law. To succeed on a breach-of-contract claim, a plaintiff must establish: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Each element is met here.

For contract formation, BSM has produced a copy of the written, executed Agreement under which Suarez agreed to certain nondisclosure and noncompete provisions. (Dkt. #1-1). To show performance, BSM has pleaded (and submitted evidence) that BSM paid Suarez $17,500 and increased his annual salary by $10,800 in exchange for signing the Agreement. (Dkt. #1 ¶ 8–9); (Dkt. #16-3 ¶ 3). The

11

pleadings also establish that Suarez and Included Power breached the Agreement by disclosing BSM's confidential information to third parties and by using such information to solicit and conduct business with BSM's customers within the restricted time period under the noncompete provisions. (Dkt. #1 ¶¶ 17–26). Finally, BSM has adequately pleaded (and submitted evidence) that these breaches of the Agreement caused it to suffer pecuniary injuries in the form of lost profits. (Dkt. #1 ¶ 35); (Dkt. #16-3).

Based on the well-pleaded allegations, BSM has established each element of its claim for breach of the Agreement. BSM is therefore entitled to default judgment against Suarez and Included Power for breach of contract.

### C. Appropriateness of Relief

In awarding relief, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). *Id.* With this principle in mind, the Court turns to BSM's request for injunctive relief, equitable extension of the noncompete and non-solicitation provisions in the Agreement, actual damages, and attorney's fees. (Dkt. #16 at 16–30).

#### 1. Permanent Injunction

As to the first form of relief, BSM seeks a permanent injunction that would enjoin Suarez and Included Power from using BSM's trade secrets, including its pricing information and customer lists.

Under the DTSA, "a court may grant an injunction to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable." 18

12

U.S.C. § 1836(b)(3)(A)(i). The TUTSA likewise provides that "[a]ctual or threatened misappropriation may be enjoined if the order does not prohibit a person from using general knowledge, skill, and experience that person acquired during employment." TEX. CIV. PRAC. & REM. CODE § 134A.003(a).

Accepting the facts alleged here as true, a reasonable likelihood exists that Suarez and Included Power will engage in, or threaten to engage in, future misappropriation and dissemination of BSM's trade secrets. To prevent such harm, BSM is entitled to permanent injunctive relief. Accordingly, the Court will grant BSM's request and enjoin Suarez and Included Power from disclosing or using BSM's trade secrets, including its pricing information and customer lists, or other confidential information derived therefrom. Consistent with the TUTSA, this injunction will not prohibit Suarez and Included Power from using general knowledge, skill, and experience that Suarez acquired during his contractor relationship with BSM. *See* TEX. CIV. PRAC. & REM. CODE § 134A.003(a).

**2. Equitable Extension of Noncompete Agreement**

In its motion for default judgment, BSM also requests that the Court equitably extend the five-year term of the noncompete and non-solicitation provisions of the Agreement for an additional two years. Under Texas law, a court may exercise its equitable power to craft an injunction that extends beyond the expiration of a covenant not to compete if the violations of the covenant were "continuous and persistent." *Farmer v. Holley*, 237 S.W.3d 758, 761 (Tex. App.–Waco 2007, pet. denied); *see also Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 158

13

(5th Cir. 2017) ("Under Texas law, a district court may exercise its equitable power to craft an injunction that extends beyond the expiration of the covenant not to compete."). Although this Court may have equitable power to craft such injunctions, it cannot grant BSM's request for equitable tolling of the Agreement's provisions because BSM did not make this request in its pleadings. *See* FED. R. CIV. P. 54(c) (providing that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); (Dkt. #1). This request is denied.

### 3. Actual Damages

BSM next asserts that it is owed damages capable of mathematical calculation and, therefore, that no hearing on damages is necessary. The Court agrees.

In the context of a default judgment, damages are normally not awarded without an evidentiary hearing. *James*, 6 F.3d at 310. But this general rule does not apply—that is, a hearing is unnecessary—when the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *Id.* Courts in this circuit routinely find that copies of contracts, purchase orders, invoices, and statements of projected costs, together with computations and affidavits, are a sufficient evidentiary basis for a damages award. *See, e.g.*, *Crown Distrib. LLC v. Ice Suppz, LLC*, No. 3:21-CV-1052-B, 2022 WL 1524119, at *6 (N.D. Tex. May 13, 2022).

Here, BSM requests actual damages for lost profits it did not earn from Chickasaw National Medical Center and Infoimage, Inc. because of Suarez's and Included Power's trade-secret misappropriation and breach of contract. (Dkt. #16 at

14

19–24); (Dkt. #19). The declarations and documentary evidence BSM has provided supply the Court with a sum for damages capable of mathematical calculation: $19,200.00. (Dkt. #16-3). Thus, BSM has proved its entitlement to an award of $19,200.00 in actual damages.

### 4. Attorney's Fees

Finally, BSM requests $22,563.00 in attorney's fees based on the Agreement, (Dkt. #1-1), underlying its breach-of-contract claim and the TUTSA.

An attorney's fee award "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). In *Mathis*, the Fifth Circuit clarified that "[s]tate law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." 302 F.3d at 461 (addressing attorney's fees for breach-of-contract claim under Texas law). So, because Texas law governs the underlying claims here, Texas law likewise governs BSM's request for attorney's fees. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014).

Under Texas law, a prevailing party in a civil action may recover attorney's fees in a claim for an oral or written contract. TEX. CIV. PRAC. & REM. CODE § 38.001(8); *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). The TUTSA also grants courts authority to award reasonable attorney's fees for "willful and malicious misappropriation." TEX. CIV. PRAC. & REM. CODE § 134A.005. But the Texas Supreme Court has also held that when a party

15

bringing multiple claims does not prevail on all claims, the party must segregate attorney's fees to the extent feasible. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

As noted above, BSM abandoned its claim for tortious interference with contractual and prospective business relations after it filed its motion for default judgment and made its request for attorney's fees. (Dkt. #19). Because BSM has not prevailed on its tortious-interference claim and has not segregated its fees, the Court declines to award attorney's fees at this time. BSM may file a supplemental motion for attorney's fees as stated in the conclusion of this Order.

## IV. CONCLUSION

For the reasons given above, it is **ORDERED** that BSM's Motion for Entry of Default Judgment, (Dkt. #16), is **GRANTED in part** and **DENIED without prejudice in part**. A final judgment will issue by separate order.

It is further **ORDERED** that BSM must file its supplemental motion for attorney's fees within **fourteen days** of this Order.

       **So ORDERED and SIGNED this 13th day of June, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

16